UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Angelina Nelson** | Civil No. 05-063 DSD/SRN |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **L.A. Weaver Company,** | |
| **Defendant, and** | |
| **Delta International Machinery Corporation,** | |
| **Defendant/Third-Party Plaintiff,** | |
| v. | |
| **Silverton Victorian Millworks, Inc.,** | |
| **Third-Party Defendant.** | |

Daniel N. Sacco, Esq. on behalf of Plaintiff

James E. Springer II, Esq. on behalf of Defendant Delta International Machinery Corporation

Stewart C. Loper, Esq. and Laura L. McConwell, Esq. on behalf of Defendant L.A. Weaver Company

The above-entitled matter came before the undersigned United States Magistrate Judge on May 23, 2005 on Defendant L.A. Weaver's Motions to Dismiss (Doc. No. 9) and to Dismiss Crossclaim (Doc. No. 14). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

### I.     BACKGROUND

The facts, taken in a light most favorable to Plaintiff, are as follows.

On August 13, 2001, Plaintiff was injured while working at Silverton Victorian Millworks in Durango, Colorado when a piece of wood launched from a wood shaper impaled her. (Doc. No. 1 ¶ 8.) Plaintiff brought suit against Delta International Machinery Corporation (Delta), the manufacturer of the wood shaper, and J.A. Weaver (Weaver) Corporation, the manufacturer of the shaper panel jig installed on the wood shaper. (Id. ¶ 1.) Delta is a Minnesota corporation with its principal place of business located in Jackson, Tennessee and Weaver is a Kansas corporation with its principal place of business in Kansas City, Kansas. (Id. at ¶¶ 5-6.) In her Complaint, Plaintiff, inter alia, claims Defendants were negligent in the design, manufacture, distribution, marketing, sales, and maintenance of their products and breached written and implied warranties applicable to their products. (Id. ¶¶ 11-26.) She claims this Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 (2000) and Minn. Stat. § 543.19 (2004). (Id. ¶ 2.) On February 10, 2005, Delta filed a cross claim against Weaver alleging that if Plaintiff suffered any injuries or damages as a result of the negligence, production of a defective product, breach of warranty or other fault of any party, said fault was that of L.A. Weaver Company. (Doc. No. 3.) Weaver moves to dismiss both Plaintiff's claims and Delta's cross claims for lack of personal jurisdiction. (Doc. Nos. 9 and 14.)

**II.     PARTIES' POSITIONS[1]**

Weaver contends that Plaintiff's reliance on Minn. Stat. § 543.19 to confer personal jurisdiction over Weaver does not survive scrutiny. Plaintiff claims § 543.19 "authorizes personal jurisdiction over foreign corporations that transact business in Minnesota." (Doc. No. 1 ¶ 2.) Weaver asserts that neither general nor specific jurisdiction are present on the facts alleged by Plaintiff. Weaver argues that it "does not have a business presence in Minnesota" and that "[a]ny contacts with Minnesota are merely incidental." (Doc. No. 11 at 3.) Weaver filed an affidavit with the Court in which it indicates that it: (1) does not have officers or directors in Minnesota, (2) does not engage in business in Minnesota or maintain a physical presence in Minnesota, (3) has not committed any tort in Minnesota, (4) does not own property in Minnesota, (5) does not advertise in Minnesota, (6) does not advertise in local newspapers or other media in Minnesota, (7) has not entered into a contract to be performed, in whole or in part, within Minnesota. (Id.) The only exception to the above representations, according to Weaver, was when one of Weaver's officers attended a trade show in Minnesota in the early to mid-1980s.

At the motion hearing, Plaintiff conceded that no specific jurisdiction is available to hale Weaver to this Court. Plaintiff, however, contends that general jurisdiction is present based upon Weaver's "extensive" business activities in Minnesota. (Doc. No. 25 at 2.) In support of her position, Plaintiff cites to a letter in which Weaver's counsel indicates that "Weaver has learned that the maximum potential consumers that it has done business with from Minnesota over the last 25 years is 12." (Id.)

---

[1] Delta did not file a brief in opposition to Weaver's motion to dismiss Delta's cross claim but argued at the motion hearing that it wished for its cross claim to remain in the case.

Plaintiff also points to another letter in which Weaver's counsel indicates that approximately 200 of 11,000 entries in Weaver's customer database—to which it sends catalogues—have Minnesota addresses. (Id. at 3.) At the motion hearing, Plaintiff represented that Weaver does not keep track of contacts with its website, so not much is known about from where such contacts originate. Plaintiff argues that "Weaver maintains a website from which consumers from Minnesota and other states can view products, email Weaver, print-out an 'Order Form Fax Sheet,' and obtain instructions and contact information for placing orders." (Id. at 3.) [2] This type of website, according to Plaintiff, actively engages Minnesota consumers to such an extent that Weaver should be subject to suit here.

Weaver replies that it "does not and has not pro-actively sought customers or consumers from the state of Minnesota" and that "[a]ll of Weaver's contact with Minnesota is initiated by a consumer or business found in Minnesota." (Doc. No. 28 at 2.) At the motion hearing, Weaver argued that of twelve possible Weaver sales to Minnesota, two were to the same person, so there were only ten possible sales to Minnesota customers. Moreover, according to Weaver, only one of the sales occurred since the filing of this action and there were no sales in the twelve months preceding the Plaintiff's injury. (Id. at 4.) Weaver represented at the motion hearing that it had sales to Minnesota customers in 1988, 1994, 1996, 2002, and 2005. Weaver also argues that Minnesota's only interest in providing a forum for this action is that Delta is incorporated here and that it would be burdensome for Weaver to have to travel from Kansas and the fact witnesses to travel from Colorado. (Id. at 8-9.)

---

[2] At the motion hearing, Plaintiff submitted documents to the Court in support of its position that Weaver advertises nationally. Plaintiff's documents were not properly filed or otherwise submitted to the Court. and the Court does not consider them in making this recommendation.

Finally, Weaver summarizes its objection to personal jurisdiction as follows: "it is offensive to the concept of due process to conclude that a Kansas corporation should be haled into a Minnesota court to stand trial as a result of a personal injury occurring to a New Mexico citizen while working in the state of Colorado." (Id. at 9.)

### III. DISCUSSION

#### A. Standard of Review

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie evidence of personal jurisdiction over the defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996); Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992), cert. denied, 506 U.S. 908 (1992).  In assessing plaintiff's evidence, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor.  Digi-Tel Holdings, Inc., 89 F.3d at 522.  Any "doubt[s] should be resolved in favor of retention of jurisdiction."  V.H. v. Estate of Birnbaum, 543 N.W.2d 649, 653 (Minn. 1996).  When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings.  Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998).[3]

---

[3] "While in some cases it is more appropriate to test jurisdictional facts upon the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other exhibits presented on motion and opposition thereto make the issue ripe for early determination."  Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 n.3 (8th Cir. 1974) (citations omitted).

### B.   Due Process and Personal Jurisdiction

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would also have jurisdiction. See Digi-Tel Holdings, Inc., 89 F.3d at 522. Minnesota's reach over foreign defendants extends to the fullest extent permitted by the United States Constitution. See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citing Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985) (en banc), cert. denied, 474 U.S. 1006 (1985)). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). For the Court to acquire jurisdiction over a non-resident defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to 'reasonably anticipate being haled into court'" in Minnesota. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The contacts with Minnesota must be more than "'random,' 'fortuitous,' or 'attenuated.'" Burger King, 471 U.S. at 475 (citations omitted.)

The Eighth Circuit considers the following factors in determining whether personal jurisdiction is proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991). The first three factors are the primary factors, the remaining two are secondary factors. Id. Authority over the person may be conferred through either specific or general personal jurisdiction. Helicopteros Nacionales de Colombia, S.A. v.

Hall, 466 U.S. 408, 414-15 & nn. 8-9 (1984). The specific jurisdiction analysis considers at least the second and third primary factors. The general jurisdiction analysis does not consider the relation of the cause of action to the contacts, the third primary factor enumerated above. The Court looks to all of the applicable contacts in the aggregate and examines the totality of the circumstances in making its determination. Northrup King. Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). At the motion hearing, Plaintiff represented that it did not allege that specific personal jurisdiction exists over Weaver. Thus, the Court analyzes only whether general personal jurisdiction exists to hale Weaver before this Court.

Where, as here, the purported in personam jurisdiction rests in part on the commercial Internet activity of the defendant, many federal courts apply some variation of the sliding scale test put forward in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). On this sliding scale, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. Specifically, the Zippo court ruled that the nature and quality of the commercial activity conducted on the Internet determine whether a defendant purposefully availed himself of the benefits and protection of the law of the forum state. See Multi-Tech Systems, Inc. v. Vocaltec Communications, Inc., 122 F. Supp. 2d 1046, 1050 (D. Minn. 2000).

At one end of the sliding scale are websites on which a defendant clearly does business over the Internet, such as entering into contracts, and therefore personal jurisdiction is proper. See Zippo, 952 F. Supp. at 1124 (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, (6th Cir. 1996)). At the opposite end are "passive" websites, where a defendant has simply posted information, and where the

Zippo scale urges personal jurisdiction is not proper.  See id. (citing Bensusan, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997)).  The middle ground contains websites on which a user can exchange some information with the host computer.  In these cases, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  Id. (citing Maritz, Inc. v. Cybergold, inc., 947 F. Supp. 1328 (E.D. Mo. 1996)).

While Zippo has been widely adopted, certain federal courts have remained cautious, concerned not to allow jurisdiction based on websites to erode the traditional due process protections owed to out-of-state defendants.  As one court stressed, "[u]ntil the [entity over which jurisdiction is sought] is actually faced with and makes the choice to dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the [entity] has purposely directed its activities at residents of the forum state."  Digital Control, Inc. v. Boretronics, Inc., 161 F. Supp. 2d 1183, 1186-87 (W.D. Wash. 2001).

Courts proceeding with this more cautious approach have generally evaluated defendants' purposeful activities by considering their activities conducted over the Internet together with any additional significant contacts.  Compare Multi-Tech Systems, 122 F. Supp. 2d 1046 (personal jurisdiction existed where defendant's product was purchased in a Minnesota store, over a commercial website, and defendant's own website allowed customers to download software directly) and Vitullo v. Velocity Power Boats, Inc., No. 97 C 8745, 1998 WL 246152, at *5-*7 (N.D. Ill. Apr. 27, 1998) (personal jurisdiction existed where defendant's website allowed users to contact defendant by email and solicited Illinois residents to attend the Chicago Boat Show and view defendant's powerboats, and

defendant also sold products to a Michigan dealer who also displayed them at the Chicago Boat Show) with Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., No. 00CIV0201 (JSM), 2001 WL 1041990, at *5-*7 (S.D.N.Y. Sept. 7, 2001) (personal jurisdiction did not exist because while defendant operated a highly interactive website, there were no actual sales made).  Hence, while the presence of a website is  significant, the mere possibility of making sales is an insufficient basis for exerting personal jurisdiction.

The Eighth Circuit, at least where the non-moving party contends jurisdiction exists based upon the moving party's general contacts with the forum state, takes the more cautious approach and considers the design of the web site as only one of several factors to be considered when determining if in personam jurisdiction exists:

> We agree with the courts that do not apply the "sliding scale" presumptively for cases of general jurisdiction.  Certainly, we believe that a consideration of the "nature and quality" of a Web site and a determination of whether it is "interactive," "does business," or is merely "passive" is an important factor in our analysis.  However, we have long held that the "nature and quality" of contacts is only one factor to consider.

Lakin v. Prudential Securities, Inc., 348 F.3d 704, 711 (8th Cir. 2003).

### C.   Court's Recommendation

The Court recommends finding personal jurisdiction exists over Weaver for the reasons discussed below.  Thus, the Court recommends denying Weaver's Motion to Dismiss (Doc. No. 9) and its Motion to Dismiss Counterclaim (Doc. No. 14).

Personal jurisdiction is appropriate over Weaver for the following reasons.  First, Weaver's customer database contains approximately 200 Minnesota addresses and Weaver has sent catalogues to these addresses.  (Doc. No. 25 at 3.)  Second, approximately twelve Weaver sales to Minnesota

customers can be confirmed.  (Id. at 2.)  Some of these sales occurred in 1988, 1994, 1996, 2002, and 2005.  Weaver attempts to argue that these sales are not so closely connected with the time frame of the alleged injury or filing of this action to be significant to a personal jurisdiction argument.  The Court disagrees.   In determining whether general jurisdiction exists, the recentness of the sales is certainly relevant.  That Weaver has had some sales in three of the last ten years suggests Weaver should be aware that it might be haled into this Court.  Third, Weaver, while not keeping track of the numbers of such communications, does publicize its telephone and email address on its website (and it can be reasonably inferred the same information appears in its catalogue) and communicates with its customers via these media as evidenced by the 200 Minnesota addresses in its customer database.  Finally, the Court finds that Weaver's website is not merely a passive instrument.  A customer can view Weaver's products, print out an order form for these products in Minnesota, fill it out in Minnesota, and send a facsimile from Minnesota to Weaver to order Weaver's products.  (Id. at 3.)  Weaver makes this transaction possible by displaying its products and providing the order form on its website and making that website accessible to potential and past customers in Minnesota.  The Court finds that the aggregate of Weaver's contacts are sufficient for Weaver to "'reasonably anticipate being haled into court'" in Minnesota.  Epps, 327 F.3d at 648 (quoting World-Wide Volkswagen Corp., 444 U.S. at 297).  Weaver's contacts with Minnesota are more than "'random,' 'fortuitous,' or 'attenuated.'"  Burger King, 471 U.S. at 475 (citations omitted.)  Due process concerns are not offended by making Weaver appear in Minnesota, a state in which it purposefully established minimum contacts.  Given the above, the Court finds it possesses in personam jurisdiction over Weaver.

      Finally, the Court finds that any burden to Weaver in maintaining this suit in Minnesota is offset

by the valid interest of Plaintiff in choosing this forum.  In sum, the "maintenance of the suit" against Weaver "does not offend traditional notions of fair play and substantial justice."  <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 291-92.  Therefore, the Court recommends denying Weaver's Motion to Dismiss (Doc. No. 9) and, for the same reasons, denying Weaver's Motion to Dismiss Counterclaim (Doc. No. 14).

Based upon the foregoing, and all the files, records and proceedings herein that are appropriately considered on this motion,

**IT IS HEREBY RECOMMENDED that:**

1. Defendant L.A. Weaver's Motion to Dismiss (Doc. No. 9) be **DENIED**.

2. Defendant L.A. Weaver's Motion to Dismiss Crossclaim (Doc. No. 14) be **DENIED**.

DATED:    June 27, 2005

       s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by <u>July 15, 2005</u>, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.