```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 05-63(DSD/JJG)
```

Angelina Nelson,

       Plaintiff,

v.                                                                    **ORDER**

Delta International Machinery
Corporation and L.A. Weaver
Company, a Kansas corporation,

       Defendant.

    Eric W. Hageman, Esq., Daniel N. Sacco, Esq. and Flynn, Gaskins & Bennett, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402 and Jerrald J. Roehl, Esq., The Roehl Law Firm, Suite 2500 East, 300 Central Avenue S.W., Albuquerque, NM 87102, counsel for plaintiff.

    James A. O'Neal, Esq., James E. Springer II, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for defendant Delta International.

    Stewart C. Loper, Esq. and Chestnut & Cambronne, 3700 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, MN 55402, and Laura L. McConwell, Esq., McConwell Law Offices, 5925 Beverly, Mission, KS 66202, counsel for defendant L.A. Weaver Company

    This matter is before the court upon defendants' motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motions.

**BACKGROUND**

On August 13, 2001, plaintiff Angelina Nelson suffered extensive personal injuries when she was impaled in the back by an eight-foot-long wooden dowel while working at Silverton Victorian Millworks ("Millworks"). As a result of her injuries, plaintiff brought this products liability action against defendants Delta International Machinery Corporation ("Delta") and L.A. Weaver Company ("Weaver"). Plaintiff asserts state law claims of negligence, strict liability and breach of warranty against both defendants.

Nelson has lived in Shiprock, New Mexico, her entire life and worked at Millworks from 1999 until August 13, 2001. Millworks was a woodworking business in Durango, Colorado, that operated from 1976 until 2004. On the morning of August 13, Nelson was operating a molder. Approximately twenty feet behind her Millworks employee John Bicyznski was operating a Delta multi-purpose Five Speed Shaper, model number RS-15 ("shaper"). (See Foukas Dep. Exs. A2, A32.) Bicyznski was using the shaper to cut the ends of wooden dowels. In doing so, he placed two dowels into a Weaver pneumatic air clamp ("jig") that was affixed to the top of the shaper.[1] (See

---

[1] When attached to the shaper in that manner, the jig functioned to hold the dowels in place as they were cut. To use the jig, a Millworks employee would place the dowels under a metal bar and then lower a clamping bar down onto the dowels to secure them. (Dexel Dep. at 65-67.) To lower the clamping bar, an employee used a lever on the jig that was located a few inches from
(continued...)

Gillespie Dep. Ex. J.)  He then began to move the jig across the top of the shaper, thereby moving the dowels towards the shaper's cutting head.  Suddenly, the shaper began to chew on one of the dowels, made a jerking motion and grabbed and propelled one of the dowels through the shaper head.  (Bicyznski Dep. at 23-25.) Unfortunately, that dowel shot through the shaper's dust collection duct and across the room where it impaled Nelson.  Paramedics arrived and transferred Nelson to Mercy Hospital in Durango, Colorado.  Nelson was then flown to a hospital in Albuquerque, New Mexico, where doctors successfully removed the dowel from her back. Following surgery, Nelson received extensive follow-up medical treatment from various doctors and facilities in New Mexico. Plaintiff never returned to work at Millworks.

Delta is a Minnesota corporation with its principal place of business in Jackson, Tennessee.  Delta manufactured the shaper in Brazil and sold it to Millworks in Durango, Colorado, on November 14, 1988.  (See Carlson Dep. Ex. S.)  Plaintiff's expert mechanical engineer, Michael J. Chiles, has identified three alleged defects as the basis for plaintiff's claims against Delta.  (See Sacco Aff. Ex. N.)  Chiles opines that the shaper (1) provided no means of diverting discharged projectiles in a direction other than towards

---

[1](...continued)
the jig's handle.  (Id.)  The lever was close enough in proximity to the jig's handle that an employee could release the clamping bar without removing his or her hand from the handle used to push the jig along the shaper.  (Id.)

3

the personnel and operations immediately behind the shaper, (2) lacked any instructions to position the shaper so as to direct projectiles away from personnel and (3) did not include any warning labels on the shaper or in its instruction manual that chips, saw dust or other projectiles could be discharged from the rear of the shaper. (Id.)

Weaver is a Kansas corporation with its principal place of business in Kansas City, Kansas. Weaver sold the jig to Millworks in Durango, Colorado, on January 29, 1990, for the purpose of using the jig with the Delta shaper. (See Carlson Dep. Ex. T.) At the time of sale, the jig was not accompanied by any warnings or documents containing warnings. (Hose Dep. at 40-41.) The manufacturing location of the jig is not clear. Plaintiff alleges that the jig was manufactured in either New Mexico or Kansas. Chiles has identified two alleged defects in the jig. Specifically, he opines that the jig was defective based upon (1) the improper location of the activation/release lever because the lever could easily and inadvertently be engaged during an operation and (2) lack of operating instructions and warning labels. (See Sacco Aff. Ex. N.)

Plaintiff initially filed a lawsuit against defendants in New Mexico state court. Delta removed the action to the United States District Court for the District of New Mexico and moved to dismiss the action for lack of personal jurisdiction. Its motion was

4

granted on September 17, 2004. On January 10, 2005, plaintiff filed the instant action. On February 28, 2005, Weaver moved to dismiss for lack of personal jurisdiction. This court denied that motion, adopting the report and recommendation of Magistrate Judge Susan Richard Nelson.[2] Defendants now move for summary judgment on all claims.

**DISCUSSION**

**I. Choice of Law**

As a threshold matter, the court must determine whether the law of Colorado or Minnesota applies to this action. "Federal courts sitting in diversity apply the forum state's conflict of laws rules." Nesladek v. Ford Motor Co., 46 F.3d 734, 736 (8th Cir. 1995) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Because this action is in the District of Minnesota, the court will apply Minnesota choice-of-law principals to determine the applicable law.

---

[2] Specifically, Magistrate Judge Nelson recommended denying Weaver's motion based upon her conclusion that the following contacts to the state of Minnesota were sufficient to satisfy constitutional principles of general personal jurisdiction: (1) Weaver's national customer database included 200 Minnesota addresses, (2) Weaver had made 12 documented sales to Minnesota residents throughout the history of its business, (3) Weaver publicizes its telephone number and e-mail address on its website and (4) Weaver's website is not passive but facilitates online orders. (See R&R June 27, 2005, at 9-10.)

5

Under Minnesota law, the first inquiry is whether an actual conflict of law exists. Nodak Mut. Ins. Co. v. Am. Family Mut. Ins., 604 N.W.2d 91, 93-94 (Minn. 2000). A conflict exists if application of either state's law would be outcome determinative. Id. at 94. The next inquiry is whether application of either state's law would be constitutional, that is, whether the state has sufficient contacts to the underlying litigation that application of its law would be "neither arbitrary nor fundamentally unfair." Jepson v. Gen. Cas. Co., 513 N.W.2d 467, 469-70 (Minn. 1994). Lastly, the court determines whether under the forum state's law the conflict is substantive or procedural. Nesladek, 46 F.3d at 736. If procedural, the court applies the law of the forum state and the analysis ends. Id. If substantive, the court considers the following five factors to determine which law to apply: (1) predictability of result, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests and (5) the better rule of law.[3]

---

[3] Plaintiff argues that the court may only consider the last two factors to determine choice-of-law issues in tort actions. The court disagrees. In the interest of thoroughness, Minnesota courts do address all five factors in tort actions on occasion. See, e.g., Nodak, 604 N.W.2d at 94 n.6; Danielson v. Nat'l Supply Co., 670 N.W.2d 1, 7 (Minn. Ct. App. 2003); see also Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001) (addressing all five factors in a tort action). Further, the Eighth Circuit has rejected the argument that Minnesota law *per se* precludes application of any of the five factors in tort cases. Nesladek, 46 F.3d at 738-39. Therefore, the court rejects plaintiff's argument and will address all five factors.

Nodak, 604 N.W.2d at 94; Jepson, 513 N.W.2d at 470 (citing Milkovich v. Saari, 203 N.W.2d 408 (Minn. 1973)).

In this case, the parties do not dispute that there is an outcome determinative conflict between Minnesota and Colorado law and that either law could be constitutionally applied. Colorado has a statute of repose that effectively bars any personal injury action that arises out of the "design, assembly, fabrication, production, or construction of new manufacturing equipment" seven years after the equipment was first used for its intended purpose. Colo. Rev. Stat. § 13-80-107. Minnesota does not have a comparable statute of repose. Rather, Minnesota has a useful life statute that provides a statutory defense to designers, manufacturers, distributors and sellers of products if the injury is sustained following the expiration of the product's "useful life."[4] See Minn. Stat. § 604.03 subd. 1. This conflict is one of substantive law. See Nesladek, 46 F.3d at 737 (statute of repose is substantive because it acts as a statutory bar to the accrual of a cause of action and creates immunity from suit); Fluck v. Jacobson Mach. Works, Inc., No. CX-98-1899, 1999 WL 153789, at *2 (Minn. Ct.

---

[4] The question of whether a product's useful life expired before the accident is one for the finder of fact. See Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826, 832 (Minn. 1988) (en banc).

App. Mar. 23, 1999) (Colorado statute of repose is substantive). Accordingly, the court proceeds to weigh the five choice-influencing factors.

As an initial matter, the court finds that neither the first nor third factors weigh in favor of either Minnesota or Colorado law. The first factor, predictability of results, "applies primarily to consensual transactions where the parties desire advance notice" of the applicable law. Nodak, 604 N.W.2d at 94. Accordingly, the predictability factor is of little significance in tort actions that arise out of accidents. See id. The third factor, simplification of the judicial task, is also not implicated in this case because the court can apply either state's law without practical difficulty. See id. at 95 (third factor favors neither state where conflicting laws are clear and can be applied without practical difficulty); Danielson, 670 N.W.2d at 8 (factor irrelevant where competing laws are straightforward).

The second factor, maintenance of interstate order, addresses whether application of Minnesota law would manifest disrespect for the law of Colorado based upon a comparison of each state's relevant interests in the litigation. Nodak, 604 N.W.2d at 95 (quoting Jepson, 513 N.W.2d at 471). The interstate order factor weighs in favor of the state that has the most significant contacts with the facts relevant to the litigation. Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001) (applying five

8

factors under Arkansas choice-of-law rules). In tort cases, maintenance of interstate order is satisfied "as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." Danielson, 670 N.W.2d at 8. However, "where a state has little or no contact with a case and nearly all of the significant contacts are with a sister state, the factor suggests that a state should not apply its own law to the dispute." Hughes, 250 F.3d at 620-21 (holding corporate defendant's principal place of business in the state insufficient contact for purposes of second factor).

The court finds that this factor weighs in favor of Colorado law because the state of Colorado has significant, if not all, contacts with the facts relevant to this litigation. See id. Plaintiff was working in Colorado for a Colorado employer when the accident occurred. Millworks purchased the shaper and the jig in Durango, Colorado. Plaintiff received all of her medical treatment in either Colorado or New Mexico. The only direct or relevant connection that Minnesota has to this litigation is that it is the state of Delta's incorporation. However, the court attributes little weight to the domicile of a corporate defendant in determining the law applicable to tort cases. See id. at 621. As to Weaver, the connections to the state of Minnesota are so tenuous that the lack thereof precipitated a constitutional challenge to personal jurisdiction. The court finds that Colorado's contacts

9

with the events that gave rise to this litigation substantially outweigh those of Minnesota.[5]  See Nesladek, 46 F.3d at 739 (applying Nebraska law where all events that gave rise to cause of action occurred in Nebraska).  Therefore, the second factor weighs in favor of applying Colorado law to this dispute.

The fourth factor, advancement of the forum state's governmental interests, addresses which state's law will most advance a significant interest of Minnesota.  Nodak, 604 N.W.2d at 95.  This factor assures that Minnesota courts do not apply a rule of law that is inconsistent with Minnesota's concepts of fairness and equity.  Danielson, 670 N.W.2d at 8.  However, the court applies the governmental interest factor in a manner that will sustain, rather than subvert, the interests of other states in areas where Minnesota's interest is not as strong.  Nodak, 604 N.W.2d at 95.  Accordingly, the court weighs the relative competing policy interests of both states.  Lommen v. East Grand Forks, 522 N.W.2d 148, 152 (Minn. Ct. App. 1994).

---

[5] Defendants also argue that plaintiff engaged in forum shopping.  Evidence of forum shopping is relevant to the maintenance of interstate order factor because it is indicative of disrespect for the law's of a state.  Nesladek, 46 F.3d at 739; Danielson, 670 N.W.2d at 7-8.  However, defendants offer no direct proof of forum shopping in support of their argument.  The court declines to infer forum shopping based solely on the fact that plaintiff filed her second lawsuit in Minnesota, which is Delta's state of incorporation, after Delta successfully obtained a dismissal of the initial New Mexico lawsuit for lack of personal jurisdiction.

In arguing that the governmental interest factor supports applying Minnesota law, plaintiff relies heavily on Minnesota's interest in compensating tort victims. See Danielson, 670 N.W.2d at 8-9 (Minnesota's policy of compensating tort victims permits access to courts, reduces chance that injured persons will need public assistance and reduces risk that Minnesota medical providers will go unpaid); Boatright v. Budak, 625 N.W.2d 483, 489-90 (Minn. Ct. App. 2001) (citing Jepson, 513 N.W.2d at 472). However, absent a direct and relevant connection between a state and the facts underlying the litigation, no significant state interest is furthered "by ensuring that nonresidents are compensated for injuries that occur in another state." Hughes, 250 F.3d at 621.

Plaintiff also cites the Fluck decision and argues that Minnesota has an interest in promoting responsibility of its sellers and producers for the products that are placed into the stream of commerce within its borders. See Fluck v. Jacobson Mach. Works, Inc., No. CX-98-1899, 1999 WL 153789, at *4 (Minn. Ct. App. Mar. 23, 1999); see also Danielson, 670 N.W.2d at 9. In Fluck, the Minnesota Court of Appeals weighed Minnesota's interest in preventing in-state manufacturers from putting defective products into the stream of commerce against Colorado's interest in limiting product liability. See 1999 WL 153789 at *4. In doing so, the court held that a Minnesota corporation that designed, manufactured and placed its product into the stream of commerce in Minnesota was

11

not entitled to the benefit of Colorado's statute of repose. See id. at *2.  The critical distinguishing feature between the situation in Fluck and that of this case is that Minnesota has no connection with the design, manufacture or production of the shaper or the jig.  Neither Delta nor Weaver has their principle place of business in Minnesota and neither company places their products into the stream of commerce within the borders of Minnesota.  The court finds the Fluck decision to be factually distinguishable and not controlling in this case.  Plaintiff has identified two legitimate governmental interests of Minnesota, but has failed to provide a nexus between either of those interests and this products liability action that has no significant contact with the state of Minnesota.

The court next considers the relevant interests of Colorado. Colorado's statute of repose was enacted with the objective of limiting exposure to product liability to a period of seven years. See Anderson v. M.K. Kellogg Co., 766 P.2d 637, 645 (Colo. 1988) (addressing constitutional challenge to statute of repose); see also Fluck, 1999 WL 153789 at *4 (recognizing legitimate purposes served by Colorado statute of repose, namely, preventing claims based upon unreliable evidence and relieving manufacturers of unknown potential liability).  Colorado's statute of repose does not undermine or circumvent Minnesota law because Minnesota's useful life statute indicates its comparable interest in

restricting liability for injury caused by aged products.  See Hodder, 426 N.W.2d at 831-32 (addressing legislative history and purpose of useful life statute).  Each state, however, has chosen to implement procedurally different devices to further those interests.  Compare Minn. Stat. § 604.03 with Colo. Rev. Stat. § 13-80-107; see also Nesladek, 46 F.3d at 740 (comparing governmental interests behind Nebraska statute of repose with Minnesota useful life statute).  Both Minnesota and Colorado have governmental interests in limiting the liability of product manufacturers for aged products.  See Nodak, 604 N.W.2d at 95 (states have equal interest when both have laws that directly pertain to issue).  The Minnesota Supreme Court has recently held that "when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest, and that state's law should therefore be applied."  Nodak, 604 N.W.2d at 92.  The court concludes that Colorado, the state where the accident occurred, has the stronger governmental interest in this action.  Therefore, the fourth factor weighs in favor of applying Colorado law.

   Minnesota courts have not placed any great emphasis on the fifth factor, the better rule of law, for over twenty years.  Nodak, 604 N.W.2d at 96.  This factor is to be applied only when all other factors are inconclusive.  Danielson, 670 N.W.2d at 9.  The court refrains from pronouncing the better rule of law when

13

"other factors point decidedly towards the application of one state's law." <u>Hughes</u>, 250 F.3d at 621. As discussed above, the second and fourth factors both weigh decidedly in favor of application of Colorado law to this action. Accordingly, the court finds no need to reach the question of whether Minnesota or Colorado has the better rule of law. For all of the foregoing reasons, the court will apply Colorado law to this lawsuit.

**II.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. <u>See id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**III. Colorado Statute of Repose**

Under Colorado's statute of repose, no personal injury action may be brought on account of a product's design, assembly or production more than seven years after such product was first used for its intended purpose unless the claim "arises from injury due to hidden defects." Colo. Rev. Stat. § 13-80-107(1)(b). Colorado courts apply an objective test to determine if a defect is hidden. Anderson, 766 P.2d at 643. A defect is anything that makes a product unreasonably dangerous. Id. A defect is hidden if it is "not readily apparent or discoverable by a reasonably prudent user." Id.; see also Niemert v. Gen. Elec. Co., 843 P.2d 87, 91 (Colo. Ct. App. 1993) (electrical transformer's defect was hidden because it could not be discovered until entire transformer was cut in half). A defect based upon a defendant's failure to warn,

15

provide instructions or guard an open and obviously dangerous component of equipment is not hidden. Anderson, 766 P.2d at 643-44; see also Eaton v. Jarvis Prods. Corp., 965 F.2d 922, 929 (10th Cir. 1992) (failure to guard a trigger to prevent inadvertent activation not hidden defect); Villalobos v. Heidelberger Druckmaschien Artiengesellschaft, 859 F. Supp. 1355, 1358-59 (D. Colo. 1994) (failure to guard exposed nip-point not hidden because danger presented was readily apparent or discoverable by prudent user).

The parties do not dispute that plaintiff's claims are within the scope of Colorado's statute of repose because they are based upon alleged defects in manufacturing equipment that was first used over seven years ago.[6] Therefore, unless plaintiff establishes that her injuries resulted from a hidden defect in the shaper or the jig, that statute of repose bars the accrual of her causes of action. As to the jig, plaintiff alleges that the jig was defective due to its improper location of the activation/release lever and Weaver's failure to provide instructions and warnings. Plaintiff sets forth no argument as to how these alleged defects were hidden. The court declines to speculate. Accordingly, plaintiff's claims as to the jig are barred by the statute of repose. Summary judgment in favor of Weaver is warranted.

---

[6] Millworks purchased and first used the Delta shaper in 1988. (See Hose Dep. at 31-32 and Ex. 10.) Millworks purchased and first used the jig in 1990. (See id. at 79, 98.)

16

As to the shaper, Delta's failure to provide instructions and failure to warn are not hidden defects for purposes of the statute of repose.  See Anderson, 766 P.2d at 643-44.  Plaintiff argues that the third defect that she alleges, the failure to divert projectiles in a direction other than towards personnel, was not readily apparent to reasonably prudent users.  In support of her argument, plaintiff claims that the universal shock of Millworks employees when the accident occurred coupled with Millwork's failure to take preventative measures establish that the accident was unanticipated.  In response, Delta points to voluminous testimony of Millworks employees that they were aware of the propensity for power woodworking equipment to eject unsecured pieces of wood and that it was common knowledge that unsecured wood could be caught and sent flying by a rotating cutting blade.  (See, e.g., Hose Dep. at 106.)  The court finds that the danger of unsecured wood being thrown from the shaper's cutting head is an open and obvious danger that would have been readily apparent to those who work in the woodworking industry.  As such, Delta's alleged failure to guard against that danger is not a hidden defect.  See Anderson, 766 P.2d at 644.  Further, a reasonably prudent person could have identified the need to position the shaper in a manner that diverted discharged wood projectiles away from areas where other personnel were working.  Accordingly, the court finds nothing "hidden" about the shaper's alleged failure to

17

divert projectiles away from populated areas. Therefore, plaintiff's claims as to the shaper are barred by the statute of repose. Summary judgment in favor of Delta is warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Delta International Machinery Corporation's motion for summary judgment [Docket No. 46} is granted.

2. Defendant L.A. Weaver Company's motion for summary judgment [Docket No. 57] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 9, 2006

s/David S. Doty
David S. Doty, Judge
United States District Court
